UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    **Plaintiff,**

v.

    Case No. 2:17-cr-179
    **CHIEF JUDGE EDMUND A. SARGUS, JR.**

WILBERTO NEMROD SALAZAR, et al.,

    **Defendants.**

## OPINION AND ORDER

This matter is currently before the Court on Defendants Wilberto Nemrod Salazar's (ECF No. 66) and Rafael Alejandro Somarriba's (ECF No. 71) Motions for Reconsideration of this Court's ruling denying Defendants' Motion to Suppress. For the following reasons, Defendants' motions (ECF Nos. 66 and 71) are **DENIED**.

### I.

A brief summary[1] of the pertinent facts is as follows. On July 28, 2017, Trooper (now Sergeant) Timothy Williamson observed a black Chevy Malibu with an Arizona license plate cross the solid line demarcating the gore while exiting eastbound Interstate 70 into a rest area. (Hr'g Tr. at 12–13 [ECF No. 44]). The driver of the Malibu then proceeded to park the vehicle in the lot reserved for commercial trucks and large vehicles rather than the lot designated for passenger vehicles. (*Id.* at 13–15). The driver—later identified as Salazar—quickly exited the vehicle and walked towards the rest area building. (*Id.* at 15).

---

[1] As the Court discussed the facts, in-depth, in its previous Opinion and Order denying Defendants' Motions to Suppress, a lengthy recitation of the facts herein is not warranted. (*See* June 25, 2018 Op. & Ord. at 1–5 [ECF No. 50]).

While Salazar was away, Trooper Williamson approached the vehicle and started speaking with the passenger—later identified as Somarriba. (Hr'g Tr. at 17–18). A short time later, Salazar returned to the vehicle. (*Id.* at 19–20). Trooper Williamson spoke with both Somarriba and Salazar and received conflicting answers[2,3] to some of his questions. (*See* Hr'g Tr. at 20, 25–26 28, 29, 81–82; Investigation Report at 2 [ECF No. 30-1]). Trooper Williamson also noted that Salazar and Somarriba appeared nervous. (*See* Investigation Report at 2; Hr'g Tr. at 20–21, 24, 83). During his interaction with Somarriba and Salazar, Trooper Williamson learned that the Malibu had been rented for Salazar by his niece. (Hr'g Tr. at 36).

During his discussions with Salazar and Somarriba, Trooper Wilson had obtained both men's driver's licenses. (Hr'g Tr. at 31). However, before Trooper Williamson had the opportunity to run any checks on either license, Ohio State Highway Patrol Trooper Michael Wilson arrived with drug detection dog, Pluto. (*See* Hr'g Tr. at 31–32, 34, 134). Trooper Williamson had earlier radioed for Wilson's assistance. (*Id.* at 133). Trooper Wilson assessed the scene and informed Trooper Williamson that he would conduct a canine sweep of the vehicle. (*Id.* at 134).

Trooper Wilson led Pluto counter-clockwise around the vehicle and instructed Pluto with hand presentations to sniff the car's seams. (Hr'g Tr. at 135–36). As Trooper Wilson walked past the passenger-side B pillar, Pluto snapped his back toward the B pillar. (*Id.* at 136–37). Pluto stopped, bracketed, and positioned his body perpendicular to the vehicle. (*Id.* at 137–38).

---

[2] When Trooper Williamson asked where the pair was heading, Somarriba stated they were going to New York. (Hr'g Tr. at 20, Investigation Report at 2 [ECF No. 30-1]). Salazar said they were headed first to Virginia for business and then they may go to New York to do some sightseeing. (Investigation Report at 2). Somarriba later changed his answer and explained that they were going to Virginia first and then perhaps to New York. (Hr'g Tr. at 28).

[3] Somarriba originally indicated that he and Salazar were just friends but then said Salazar was his boss. (Hr'g Tr. at 29). Salazar stated that Somarriba was his assistant and employee, yet had difficulty recalling Somarriba's name. (*Id.* at 25–26, 81–82).

2

Pluto then scratched the vehicle, a signal the canine was trained to give when he senses the presence of narcotic odor. (*Id.* at 138). As Trooper Wilson pulled Pluto away from the vehicle, Pluto continued to alert the presence of narcotic odor along the right side of the vehicle. (*Id.* at 143).

After Pluto's positive alert, Troopers Williamson and Wilson began to search the Malibu. (Hr'g Tr. at 143; Investigation Report at 2). During the search, they found nine bundles of narcotics weighing approximately 21.5 pounds, in total, secreted in the lining of bags and suitcases. (*See* Investigation Report at 2–3). Both Somarriba and Salazar were placed under arrest. (*See id.*)

On August 10, 2017, a Grand Jury for the Southern District of Ohio returned a one count Indictment charging both Salazar and Somarriba with possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(b)(1)(A)(i). (Indictment at 1 [ECF No. 10]).

Defendants moved this Court to suppress the evidence seized during the vehicle search, contending that the evidence was collected in violation of the Fourth Amendment. (ECF Nos. 30 and 48). After considering all parties' briefs and the witnesses' testimony from the February 9, 2018 Suppression Hearing, the Court denied both Defendants' motions. (*See generally* June 25, 2018 Op. & Ord. [ECF No. 50]).

Salazar entered a conditional plea of guilty to Count 1 of the Indictment on August 2, 2018, (*See* Aug. 2, 2018 Mins [ECF No. 56]), reserving the right to appeal the motion to suppress. Likewise, Somarriba entered a conditional plea of guilty to Count 1 of the Indictment on August 30, 2018. (*See* Aug. 30, 2018 Mins. [ECF No. 59]).

On August 22, 2018, an appellate court for Ohio's Fifth Appellate District issued an opinion upholding the trial court's suppression of evidence seized during a vehicle search after

3

an alleged traffic violation. *See State v. Woods*, 5th Ohio Dist. No. 18-CA-13, 2018-Ohio-3379, 2018 WL 4033826, at *6. A witness in the current action, Trooper Wilson, was also involved in the *Woods'* search. *See id.* at *1. In reaching its finding that law enforcement lacked probable cause to conduct the initial traffic stop, the *Woods* trial court found Trooper Wilson's testimony, viewed together with all other evidence, was not credible. *Id.* at *4.

Defendants now implore the Court to reconsider its previous Opinion and Order denying their Motions to Suppress, in light of the *Woods'* decision. (*See generally* Salazar Mot for Reconsid. [ECF No. 66]; Somarriba Mot. for Reconsid. [ECF No. 71]). The Government opposes reconsideration. (ECF Nos. 68; 76).

## II.

As the Federal Rules of Criminal Procedure do not provide an avenue for parties to seek reconsideration, motions for reconsideration in a criminal case must comply with Federal Rule of Civil Procedure 59(e)'s standards for altering or amending judgment. *United States v. Robinson*, 5 F. Supp. 3d 933, 936 (S.D. Ohio 2014) (citing *United States v. Titterington*, No. CR. 2-20165, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003)). Generally, "motions for reconsideration are looked upon with disfavor unless the moving party demonstrates: (1) a manifest error of law; (2) newly discovered evidence which was not available previously to the parties; or (3) intervening authority." *Blankenburg v. Miller*, No. 1:16-cv-505, 2017 WL 3730610, at *1 (S.D. Ohio Aug. 30, 2017) (citations omitted). Further, while permitted, "a court should be 'extremely reluctant' to" reopen a suppression proceeding. *United States v. Stennis*, 457 F. App'x 494, 502 (6th Cir. 2012) (quoting *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1111 (2005)).

## III.

Defendants submit that reconsideration of this Court's previous Opinion and Order denying their motions to suppress is proper given the State Court's finding that Trooper Wilson's testimony, in a separate case, was not credible. (Salazar Mot. for Reconsid. at 5 [ECF No. 66]; Somarriba Mot. for Reconsid. at 4 [ECF No. 71]; *see also Woods*, 2018 WL 4033826, at *4). The Court does not agree.

**A.     Probable Cause to Stop Defendants**

To the extent that Defendant Salazar asks the Court to reconsider whether Trooper Williamson had probable cause to conduct the initial stop, (*See e.g.* Salazar Mot. for Reconsid. at 2–4,); such reconsideration is denied. Salazar has not produced new evidence nor drawn the Court's attention to intervening authority that may affect the Court's previous analysis of this matter. Essentially, Salazar seeks to merely relitigate that which the Court has already decided. Absent a compelling reason to do so, the Court is not inclined to reconsider Trooper Williamson's credibility.

**B.     Probable Cause to Search Defendants' Rental Car**

Both Defendants ask the Court to reconsider whether law enforcement had probable cause to search the vehicle as, Defendants aver, the *Woods*' decision calls into doubt Trooper Wilson's credibility. The Court disagrees.

"[I]t is the province of the district court to weight the evidence, resolve any discrepancies which may exist, and judge the credibility of the witnesses." *United States v. Brown*, 20 F. App'x 387, 388 (6th Cir. 2001) (citing *United States v. Bradshaw*, 102 F3d 204, 209–10 (6th Cir. 1996). First, the majority of Trooper Wilson's testimony is corroborated by other evidence. Both Trooper Wilson and Trooper Williamson testified that Pluto alerted to the scent of narcotics on Defendants' vehicle when the canine scratched the vehicle's door. (Hr'g Tr. at 33–34, 138, 142). The alert is

further corroborated by the audio recorded by Trooper Williamson's dash camera—the sound of Pluto scratching the vehicle is unmistakable. (Dash Camera Video at 11:29:14 a.m. to 11:29:24 a.m.).

Second, the Court had the opportunity to assess Trooper Wilson's credibility during the February 9, 2018 Suppression Hearing. The Court observed Wilson's demeanor, body language, and voice inflections as well as his responses to the questions posed, including both Defendants' cross-examination of Trooper Wilson's failure to activate his dash camera. (*See* Hr'g Tr. at 145–48, 179–82). Additionally, Defendant Somarriba's counsel robustly questioned Trooper Wilson as to whether he signaled for Pluto to alert on Defendants' vehicle—the portion of Trooper Wilson's testimony that is uncorroborated. (*See* Hr'g Tr. at 183). After considering all evidence submitted, the Court found Trooper Wilson's testimony concerning his involvement in the search of the Malibu to be credible. That the State Court found Trooper Wilson's testimony in an unrelated matter not credible does not impugn Trooper Wilson's testimony in the current action. As such, the Court finds no reason to re-open the suppression hearing and reconsider its previous findings.

IV.

For the reasons set forth above, Defendants' Motions for Reconsideration (ECF Nos. 66 and 71) are **DENIED**.

**IT IS SO ORDERED.**

\_\_1-16-2019_____ _____
**DATE** **EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**